Case numbers 25-1601, 25-1602, 25-1603, Ibrahim Alzandani et al. v. Hamtramck Public Schools et al. Oral argument not to exceed 15 minutes to be shared by appellants. 15 minutes for appellees. Ms. Halloran, for the Appellant, Michigan Department of Education, you may proceed. Good afternoon. Good afternoon. May it please the court, Kathleen Halloran, on behalf of the Michigan Department of Education. I've been assigned five minutes for oral argument and reserve one for rebuttal. Your Honors, this is a case about enforcing the IDEA as it's written. This court should reverse the decision of the District Court and draw two distinct lines that the District Court and plaintiffs have erased when it comes to asserting claims under the IDEA. The first line that should be drawn is that there is no cognizable claim against the state under the IDEA. And the second line that should be drawn is that there is no futility exception to the IDEA's requirement to exhaust. Given my limited time and that the state is the only SEA that's involved in this matter, I'll first turn my attention to the issue of whether or not there is a cognizable claim against the state under the IDEA. And the short answer to that question is no. And there's two main reasons why there is no claim against the SEA under the IDEA. And that's pursuant to the plain language of the statute and also in regards to whether or not there's an implied claim. Neither is applicable here. When we look at the plain language of the statute. You can have claims in which the state can be sued, right? Under the IDEA, they're very, very limited, Your Honor. They're only in the case where it is the state that is providing the provision of FAPE. Because the only claim under the IDEA is under 1415I. And under that claim, a party that is dissatisfied with the decision of the administrative court can file a case based on their complaint. And the complaint must be based on the provision of FAPE. And since the state is the general supervisor of the system and according to Michigan state law does not provide educational services, it is the LEA that provides the FAPE. What percentage of the local school district's funds comes from the state? I don't know that question, Your Honor. There is pursuant to the IDEA and the funds for special education that flow from the feds to the state down to the local districts are all set by a I don't know off the top of my head. Let's just say hypothetically, it's roughly 50%. And for whatever reason, the state shut down that funding, making it impossible to comply with the IDEA. Could you sue the state then? Not under the IDEA, Your Honor, because there is only that one narrow cognizant claim where the enforcement mechanism would come in because this is a spending clause legislation where the enforcement mechanism would come in would be the federal government to initiate an enforcement action against the state. Students themselves would have no private cause of action as it's stated under the IDEA. That would be based just between the state and And remind me, I'm sorry, I didn't realize this, but the IDEA does permit the Attorney General, the U.S. Attorney General to bring a lawsuit to enforce the IDEA? The IDEA in Section 1416 has about, I think it's four levels of enforcement action to take to monitor. So to issue, say, a corrective action plan, and if that doesn't work, there's different steps. The last step, there is a requirement that the Department of Education could withhold funds, and there would be a hearing involved with that. So one of the Does that lawsuit require exhaustion out of curiosity? No, because the federal government would be initiating that under the IDEA and their enforcement principles. They would have to just go through the different stages that's laid out in Section 1416 of the IDEA. So why aren't, is one possible way of thinking about this case, I mean, this is a question probably more for the plaintiffs, but I'm just curious if you've thought about it. In a systemic violation setting, that sounds like exactly the role Congress envisioned for the federal AG. Based on the instruction that the Supreme Court has recently issued in Medina not to imply any cause of action, any sort of systemic claim or anything that the state is not doing to withhold their end of the bargain between the state and the federal government, and not a private cause of action from any student against the state. Just to make sure, this question's going both directions. It happens to be friendly to you. It doesn't mean it's what I think. I'm just trying to say, if it's, quote, systemic violation, and there's not a way to remedy them without exhaustion locally, the federal AG could bring a lawsuit to correct systemic violations, yes? Without worrying about exhaustion. I think that the claim that the federal government would bring is to withhold funds. I got it. Anyone living in America realizes the federal government's power to withhold funds through the president over the last couple of years? Got the point? But I guess you're not getting the drift of what I'm saying. The statute puts forth for dealing with systemic violations. I don't believe that the IDEA creates a specific cause of action for the U.S. Attorney General to bring an action against the state for systemic claims, your honor. I don't believe the IDEA lays that out. I think that, like I said, it's based more on the enforcement provision to issue corrective action plans to make sure the state is in line. And then if the state does not follow through on that corrective action plan to then withhold funds based on 1416. Can I ask counsel about the exhaustion piece? I guess the plaintiffs here, among other things, they're complaining about staffing shortages and money shortages. And so let's assume that there is a futility exception. How would an administrative process remedy things like staffing or money shortages? So the IDEA does not create a cause of action for money shortages. How the funds flow from the the Michigan codes that the school state aid act. And so any cause of action relating to funding, there is nothing in the IDEA that sets forth any sort of cause of action for that. Your answer is the same with regard to staffing as well under staffing? Correct. And both state law and the IDEA anticipate that it's the local school districts that are actually making the decisions to staff and what curriculum to use and how much funding to provide to special education programs specifically. Does that mean your response to systemic violations and futility is that the predicate doesn't exist? These aren't violations? I would say that under the IDEA, there is no exception that is listed and the statute does say in 1415I. And so any sort of claim has to be exhausted. And I think when we look at the policy behind. But I thought we're having a hard time communicating here. I was trying to follow up in your answer to Judge Ritz where I thought you responded to both of his questions by saying without respect to exhaustion, that that's just not a there's not a staffing violation. There's not a not enough money violation. So in other words, you could you could win on 12B6 by saying exhaustion or not. This is not it's not a violation. Correct. The IDEA does not have any sort of technical causes of action for violations of the IDEA. The only cause of action that exists is under 1415I for that provision of FAPE. And so there isn't a cause of action under the IDEA for staffing shortages or funding, that sort of thing. The plain language dictates that there just simply is not a cause of action for those. Yeah, I guess I guess where I'm hung up and there's a lot to unpack in this case is is I mean, isn't the plaintiff's theory that because of the understaffing, they're not getting the FAPE, right? That is their their theory, but they they don't have the plain support to make that assertion here. Well, they they do in the sense if they exhaust with an individual FAPE and the school district can't provide, they win in that individual case. In other words, you can't get out from under the IDEA by saying we don't have enough staff for enough money. If they exhaust, they go in front of the administrator and the school district says, well, of course we can't afford to do what is required, then they win. So if the plaintiffs exhaust as they're required to under the IDEA, they still have to bring a cause of action that is specific to 1415I. And so it must be linked to the provision of FAPE. The IDEA statute is clear that that is the only cause of action. And so technical violations still would not be resolved through the IDEA. So is the essence of what you're saying that, as Judge Sutton sort of indicated, that in order to get around the IDEA, the school district simply has to say we don't have enough money to staff any of these things. We can't do any of this for financial reasons. And so even though it's clear you've exhausted, it's clear that you're not getting the FAPE. That's the further? We can't be required to provide this because we don't have any money and we have decided not to have any money? Could they just decide not to have any money? That would not be that hypothetical scenario. The IDEA does not provide a cause of action for that, for a local school district to simply say we don't have enough money. The School State Aid Act funnels the appropriate funds to each of the local school districts. And again, we have to look at the plain language of the statute and what the actual cause of action has to be for that provision of FAPE. And it has to do with applying IEPs and child fines related to students. There isn't any sort of technical cause of action regarding funding. But just to make sure you're capturing the two sides of this that I'm just trying to get you to cut to the key thing, I think we all agree, I'm sure all the lawyers agree, that one path here is for one of the plaintiffs, presumably one still in school, to say, I need a plan. We want the plan implemented. The school district responds by saying, well, the plan requires a tutor from one to three each afternoon, five days a week. And that is what a student requires to deal with their disability. And then the school district comes back and says, well, shoot, we don't have the money for that. We all agree, don't we, that that doesn't work. The school district would be stuck on that individual, and there is no I don't have the money explanation. And the plaintiff's lawyer would just keep running up fees, and they would get their injunction. And at some point, either the school's going to be in contempt, or they're going to comply, or Congress is going to shut down funding. So we all agree, that's one way this could work. Yes? Just say yes, if you were on the same page, right?  Okay. So I think the heart of Judge Ritz's question is, if we know ahead of time, and I think this is the heart of the plaintiff's point, if we know ahead of time, they're going to give the same answer to every IEP that requires, say, a tutor in the afternoon. Is that worth, I mean, should they have to exhaust if they're going to get the same answer? So that's, and I know, I know why you think they shouldn't have to exhaust, but let's just say there is a futility exception, again, only for the sake of argument. Wouldn't it apply there? Or what, how do we deal with that? Exhaustion is still important, because when we look at the policy behind the IDEA, which is to provide individual special education services. So the need to exhaust is in order to determine what that student actually needs to provide a FAPE, to be provided a FAPE. So is that, say, 10 hours of tutoring, or is it two hours of tutoring? What are their disabilities? What are their needs? And so the remedy that is incredibly important under the of the IDEA that is for each of the students, it's very important that that exhaustion. So your way of answering this is even if money is going to be a problem lurking in lots, if not every case, it doesn't matter because no two disabilities are the same. And there's always going to be a variation. One will be two hours, one will be three, one will be a tutor, one's autism, one's quasi-autism, whatever. Is that your main point there? Correct, your honor. Why don't we hear from the second person, unless my colleagues want to, okay, let's hear the lineup. Is this Mr. Stemfort? Yes, good afternoon. Yes, Stephen Stemfort for Wayne RESA, and I believe I also have one minute for rebuttal if I can do that. Yeah, so following up on the questions about exhaustion, I think it's, I think the statutory structure is actually quite interesting here because this is not like, for example, a claim under the Prison Litigation Reform Act where you have some freestanding claim and then you have to kind of route it through the separate administrative exhaustion process and then get it to district court. What we have here is we have an IDEA claim, which is itself a creature of statute, right? So there's no freestanding IDEA claim or right to fape. It arises only because of the statute. And so, and the statute itself says you don't have a private right of action that you can get into court unless you're aggrieved by the process, the administrative process. So in other words, when we're talking about kind of exhaustion in this scenario, what we're really talking about is we're talking about the preconditions to the claim itself. So you can't have an IDEA claim without having gone through the initial process. So that's another reason why when we talk about futility in this exception, it doesn't, that concept doesn't map well onto an IDEA claim because you can't really be futile in order to forego the preconditions of the claim. Because if you haven't gone through the process, you don't have a claim under the IDEA, under 1415 I-2. First of all, that's a very thoughtful point. So thank you for that point. But it's just not hard to think of things that, and maybe futility is not the right way to put it, systemic violation, whatever phrase one wants to use. But you can imagine situations where the way the district manipulates the process, and I'm not saying this district did this, but you say we're not doing hearings. So that shuts off. I really like your point that there is no claim without the statute and it's the process that creates the claims. It's a really healthy, good point. But I'm just still trying to figure out whether that still contemplates the possibility of a district that says, well, the answer, the reason you never have a claim is we never do the process. Would that be a systemic violation that would allow them to seek conjunctive relief to force them to, well, force them to exhaust, I guess. So I think that's a very helpful question in terms of what it means to have a quote-unquote systemic violation. Because I think the Heldman case from the Second Circuit is helpful on this because it says, look, if there is a problem that you're alleging with the administrative hearing system itself, in that case, it was that the administrative hearing officers were allegedly appointed in an incorrect way. And so they were attacking the system itself, the administrative hearing system. And the court there said, well, okay, if you're attacking that kind of those preconditions that I talked about. What was the nature of that cause of action? What was the statutory cause of action they used and blessed in that case? I believe it was under either the ADA or the Rehabilitation Act, but I'm not positive. Oh, I see. Oh, I see. So they used another statute to attack IDEA? And I'm not positive about that, but that's often how this works, right? You have a plaintiff who asserts an ADA claim, and then there's an argument, well, they have to exhaust it under 1415 L. And then the question is, well, is there exhaustion? Would an IDEA claim need to be exhausted, right? So that's often how it works. And again, I can't remember whether that's exactly what happened in Heldman. But again, the concept- Your point is there should be a way to attack the process if they're unwilling to engage in the process or it's a corrupt process or whatever the problem with the process is. So, and I can understand, and I see I'm running out of time here, Your Honor. No, no, we're going to keep going as long as you're being helpful. Well, everyone, just because I say it's the end, we're not saying you're not being helpful. Forgive me for even suggesting that, but we all have lives. So, but right now you're definitely adding value. I appreciate it, Your Honor. So, yeah. So I think that's what Heldman recognizes, right? Heldman recognizes, look, if there's a challenge to, like I said, the preconditions of the claim itself, then, okay, that makes sense that you don't have to exhaust the process itself that you're attacking, right? But I think a lot of the confusion in these cases over systemic violations, you see the courts really struggling with, well, what is a systemic violation? What does it mean for a district to be in systemic violation? And I think the problem is when we say systemic, we're talking about in some, sometimes we're talking about the administrative hearing system. And in other cases, we're talking about the school district system. And I think the systemic violation, if it's going to exist, it would be only available when you're talking about a problem in the administrative hearing system, right? Because otherwise you have these cases where people are saying, well, look, the school district, the school system has a widespread policy of failing to comply with IEPs. Well, the problem with that claim is that most of those claims, you can take those through the ALJ, the administrative process, and you can get relief on an independent, individual basis. And again, to your Honor's questions earlier about, well, what if they just don't have money or what if they're just really slow? The problem is that there's no statutory basis for failing to go through the administrative process. But the other problem is that each individual situation is going to be different, right? You may have a different potential remedy for one child in one particular circumstance, and you may have a different remedy for a different child, different circumstance that may or may not require expenditure of funds. What if you had a situation where the school district in connection with the administrative process, they have to interpret the law too, like everyone has this job to do. And so they just say, when it comes to autism, we cap the tutors at one. We just think that's a reasonable approach. We don't think IDEA requires us to have more than one tutor. I'm making this up. Just go with it, even though it probably is quite fanciful. But the idea is they just say, we've read the statute, and we don't think there's any way in which, I don't care what the problem is or the degree of autism, it's never requires more than one. So there's just now this pure legal dispute, we'll say partly policy embedded. Is that something you still have to exhaust? I mean, what do you do with that problem? Well, yes, absolutely. So because the child in that particular scenario is going to be seeking a free appropriate public education, they're going to be seeking a FAPE. And so under FRI, we know they have to exhaust. And as a practical matter, if they get to an administrative hearing, and the ALJ says, what are you talking about, district? This isn't sufficient to give this particular child in these circumstances a FAPE. Well, then the school district loses. So your answer to the systemic violation, and it's their goal of more efficiency, is this actually is a pretty efficient system. You have a test case, the test case gets processed, they try their will never use more than one tutor for autism. People say that's ridiculous, they lose, and they have the same choice every other government losing litigant has, keep losing or follow the precedent. Exactly, Your Honor. And, you know, the because the school and the TR case from the Third Circuit talks a little bit about the spillover effects in exactly the scenario that you're talking about. And of course, these due process hearings, I mean, they are costly for the school district. And so there's a real incentive. If you get repeated due process hearings on the same issue, there's a real incentive for a school district to... Remind me, are there fees for successful plaintiffs? I can't remember. Well, the school district has to bear the cost of the hearing. So from a school district's perspective, running the hearing, having attorneys... Yeah, I got that. But how about the plaintiff's lawyer's fees? I'd have to... Yeah, I'd have to ask the department about that. Okay. Were there any other points you wanted to make? Can I ask actually, counsel, about the question of whether a futility exception exists? What is the current state of our court's case law on that question? I'm asking you. Obviously, I might have some thoughts about it, but I'm asking you what the answer to that question. Well, so the Perez case, that of course was reversed on other grounds in the Supreme Court. So does our Luna Perez case bind us today? Well, so I would take the position that it probably does because it was decided, and then it was reversed on other grounds. So the components of the decision from this court that were not reversed, I think are still in play. And I think the Supreme Court specifically decided we're not going to address that particular issue, whether it's a futility exception or not. Yeah. I'm not sure that's how we've treated like scenarios in the past. Let me just hypothesize that I disagree and ask if I think Luna Perez does not bind us, our decision in Luna Perez, does Covington bind us? Well, and I think Perez, I think Judge Tapar's opinion has that footnote. I know, I know. The intervening case from Ross. And we would, of course, we'd agree with that footnote. I think the intervening case in Ross has changed the ballgame in terms of it's made it very clear that when you have a statutory exhaustion component, and again, labeling this exhaustion is a little bit, it's a little bit different than exhaustion. But if we have a statutory exhaustion requirement, then, you know, you can't have a judge made doctrine that kind of overcomes the statutory language. So we would be with a footnote on that one, Your Honor. Yeah, thank you. What would you say, though? What if the panel didn't want to get to that? Do you lose? In other reason does not want to, quote, decide if there's a futility exception or systemic violation, exception, whatever, we're just, we're not prepared to engage with it. Or if we had our druthers, we wouldn't. Would that mean you lose? Well, no, Your Honor. Because even if, even if you take out the worst case scenario, you say there is futility exception that's available, and there is a systemic violation that's acceptable. We still are in a position where the plaintiffs have not alleged, you know, anything that's really close to what other courts have, have held our systemic violations, right? I mean, pages 17 and 18 of their brief, it's pretty clear, you know, there's a, you know, there's the central claim is, look, Hamtramck was out of compliance with a bunch of IEPs, right? That's the allegations, the complaint, that's really what they're complaining about. In many other cases, even those courts that have accepted systemic violations theories have said, it's got to be more than that, right? It's got to be, again, it's got to be either something with the administrative hearing system, or it's got to be a, you know, a district policy wide or a district wide policy that's an official policy and official act. And the Ninth Circuit, right, in the Martinez case, in the Student A case, they have a pretty good discussions of that. The Third Circuit case in the TR case is also, and again, you can see these courts grappling with it, but whatever the test would be, the complaint here simply doesn't meet that. Well, unless my colleagues have other questions, you're still being helpful, to be clear, but we'll maybe hear from the third lawyer and you still have rebuttal, of course. Okay, so is it Mr. Dietzel? Good afternoon. Good afternoon. I've also reserved one minute for rebuttal. May it please the court, Robert Dietzel, here on behalf of Appellant Hamtramck Public And Chief Judge Sutton, I'd like to start with a point that you had made earlier about the efficiency of the administrative hearing process. And I think this point got lost in the briefing a bit, but that process by statute and rule is a 75-day beginning to end process. And that process is operated and run by the Office of Administrative Hearings and Rules, which is a state department, not a local district department. A party that proves their case that they've been denied a free appropriate public education is entitled to the relief provided through that process. Do you know if they get fees? Do they get fees? I don't remember. They do indeed get fees. IDEA has a fee-shifting provision. And so it has within it natural incentives to comply. If that system says district that policy of capping tutoring at one hour violates that student's right to stop doing it, if that district doesn't stop doing it, they have a line of attorneys out the door who come in and now have a preset determination. Out of curiosity, is it impossible to have a class action in an IDEA case? I think the courts have said that it's a possibility, but it's a legal possibility without it being a practical reality. For the reasons that my co-counsel have already said, that these claims are inherently individualized and class action relief is inherently part of the class. And so how one can say, does this student require that relief when their needs are very different and the nature of the IEP itself is very different. So, yes. Do you agree with Mr. Van Stemforth that you could bring a claim to challenge the process? I do. I've thought a lot about this. I'm sorry to interrupt, but I just want to make sure you're answering the questions on my mind. The way Mr. Van Stemforth answered it was not that it's an IDEA claim. It would be an ADA or a Rehab Act claim. Is that the way you'd get at it? Or can you actually bring an IDEA claim to attack the IDEA process? Well, I think you can, and I don't want to couch it as an exception to exhaustion because I don't think Ross allows that. But if we look at the Ross case, the remedy has to be available. And although the language in the Prison Litigation Reform Act and IDEA are slightly different, if the system shut down, if the Department of Education laid off all of the hearing officers, now the party seeking relief would have no mechanism to obtain it. And I think that is a different animal than whether the claim itself is futile. Here, that would be that there is no avenue to pursue the relief, and therefore we have to get to that. I think that the availability and that we look to whether the remedy is available, Ross tells us that, and as a practical matter, I think that would be the only avenue to bypass the hearing process if there was no hearing process. Although that looks like an implied cause of action if you're relying on IDEA. I don't think it's an implied cause of action. I believe that it's an express cause of action because we have a party seeking relief that is available under IDEA. They've attempted to exhaust their administrative remedies. There is no opportunity to exhaust, and therefore they come to court saying, I tried, didn't have an opportunity, and therefore the court now has jurisdiction. And I think that also takes us to Judge Ritz's point about what if there is no remedy. Not having sufficient funds, not having sufficient staff is not an IDEA violation, period. A party can't obtain a remedy because there isn't enough money in the process. A party can obtain a remedy, though, if because of the lack of funding or lack of staffing, they didn't get a free appropriate public education. The way the system is set up, the administrative law judge makes that determination, and the administrative law judge determines the remedy. And that could have happened here within a 75-day process. And to be very clear, and this is one of the points that I really want to emphasize, and I think it got lost in the briefing, is that Section L, 1415L, doesn't speak in terms of whether the remedy is available from the administrative law judge. It speaks in terms of whether the remedy is available under IDEA. So, a party who's dissatisfied because the administrative law judge only provided one hour of tutoring, and they wanted something significantly more, or a restructuring of the system because of the lack of funding or staffing, they may be aggrieved by that one hour of tutoring, even though they won their due process case. They're still aggrieved. The avenue is now open with an administrative record to go to that federal court and say, yes, I prevailed. They denied me fate, but the remedy is inadequate. And I believe that that is entirely possible. But when we add a layer of futility to it, we bypass that entire process. So, now we don't have an administrative record. We don't have the opportunity for the collaborative resolution process that's built into that 75-day period. And in a case like this, instead of getting some remedy, maybe not everything they wanted within 75 days, we go into federal court litigation with discovery, and that remedy is delayed year after year. And that's exactly the policy that the Congress intended to avoid and push against. Quick resolution, get kids what they need, have the experts make the decision, and if you're still dissatisfied, take your record and your claim to the court, but not first. Counsel, how does any of that have to do with the state, the MDE? So, again, to the other piece of this, where you're arguing, yeah, sure, the MDE should also be liable. How are they providing the FAPE? Sure. I agree to a point that MDE doesn't typically provide a FAPE, and there are some cases that they do. They operate the Michigan School for the Deaf. But Section 1412 does give MDE skin in the game and makes them responsible for ensuring the provision of FAPE. And the case law that we've cited in our brief makes it clear that when a student is denied that FAPE, then if the reason they were denied that FAPE is in some way attributable to the state's action, whether that's through omission, through policy, through that requirement that we only provide ABA or autism tutoring at one hour a week, if the denial of FAPE is attributable to the state's action, then they may be named in that lawsuit after exhaustion, and the district court. Why isn't the answer just to let the federal government threaten not to fund? Chief Judge Sutton, I believe that that is a secondary remedy. To answer your earlier question. But it seems like it's the main statutory remedy. If there is truly a systemic violation caused by state policy, then 1416, I do believe, makes the U.S. Department of Education. What I don't understand is how your response to Judge Ritz isn't, quote, the systemic violation problem. Is not the systemic violation problem in that. In other words, I thought your answer to Judge Ritz was that you could have a situation where the state just won't give the funds it's supposed to give. That seems unfair to the school district because now it doesn't have the funds to provide, you know, honor the FAPE. And I'm just trying to figure out why the statute doesn't contemplate that by saying if you don't use the money how it's supposed to be used, you're not going to get the money. We'll turn off the spigot. I understand. I think it does. I think it does as one mechanism with state or U.S. Department of Education. What's your best statutory argument for the second route of, you know, making the state liable even when it's not in charge of the FAPE? Sure. Best statutory argument is 1415, I, which does not identify the party against whom the complaint may be brought in federal court. Okay. And then the hints that we've laid out in our brief about the ability to obtain attorney's fees if a state educational agency is brought in and the litigation is pursued beyond its normal course, that would be an unnecessary provision if the state could not be made a party. Well, now it could be there because of the school for the deaf problem. Fair point. Okay. Well, do you have anything else? The only other point I wanted to make is just to clarify a citation in Amicus's brief, which came in after our reply. They asked the court to look at Carr versus Saul, which is a 2021 Supreme Court decision that they say changes the trajectory of the Ross line of thinking. And it doesn't. That case was not an exhaustion of administrative remedies case. It was an issues exhaustion case. And the Supreme Court went out of its way to say that this was a prudential exhaustion issue, not a statutory exhaustion issue. And that point is key. We see that in Ross and we see that in Turner versus I think we're, I think we're good. You'll get your rebuttal. And is it Mr. Turf? If I got it pronounced right, or is it have a strong E at the end? Turfy. Okay. Mr. Turfy. Your turn. Good afternoon, your honors. And may it please this court. My name is Tariq David Turfy arguing on behalf of the three named plaintiffs and more importantly, the proposed class of similarly situated students. Now I emphasize that my representation includes the proposed class of plaintiffs because the nature of this complaint is not one of what the individual student would do at the administrative level. The fact that the suit was brought on behalf of a class of plaintiffs is going to be critical to the court's consideration of the two issues up on appeal. That first issue is whether that court, whether this court may apply the futility exception to the ideas requirements for exhaustion. The side question there is whether this court will recognize the exception based on systemic violations. So Mr. Turfy has just cut right to the, you know, some of the concerns I have about your position. You know, if we let plaintiffs be the master of their complaints and they can bring these class actions, what case wouldn't get around exhaustion if as long as you said, you know, they don't have enough money. I mean, I don't think there's a school district in the country that says we have enough money. I mean, that's just not a statement that comes out of school districts. They have future levies. So it just seems like an incredible loophole in the whole system. And so I must say that really gives me pause here. I personally really wonder how many class actions you can have an idea except for something that's attacking the process. You know, that part makes sense, but it's really hard for me to see. I think the whole point of it is it's antithetical to class, you know, common issues. The whole point is each individual's different. Each IEP is different and therefore each FAPE is different. And I would agree with your honors, you know, assessment of each individual IEP because it is, it's a student per student consideration. However, you get away from that student by student analysis, especially when you follow the logic of Covington. When you realize that the administrative exhaustion, I think we lost you. Oh, there you go. Can you hear me, your honor? Yeah. Yeah. Now you start with the logic of Covington and when you try to reconcile whether or not this proposed class can actually comport with the individualized requirements of the administrative exhaustion, you can't go back in time and put any particular student in that classroom and provide that FAPE. That's a remedy that cannot be afforded whether you consider it on an individual basis or on a collective basis. And when the remedy can't be afforded, Covington tells us that the entire administrative process would be futile. And you couple that with the systemic violations allegation and now we turn, you know, to what the district court relied on, which was the JS case in the second circuit, that's JS versus Attica Central Schools. The appropriate consideration made there was not only systemic violations, but how it relates to futility, how the nature and volume of the complaints, which were incapable of correction by the administrative hearing process. And if each plaintiff, as the JS court found, had been forced to take his or her claim before a hearing officer or appeal to another local or state official, there is not only a high probability of inconsistent results, but the results might not even be there anyways. And in this case... What do you mean by that, counsel, that the results wouldn't be there? What do you mean by that? It's following the Covington logic, meaning that the administrative process can't provide the relief that you're seeking. Well, I guess, but why not? Why not? Let's assume you can pursue a systemic violations exception and let's assume you've alleged systemic violations. I'm not sure I agree with either of those points, but let's assume it. And then don't you also have to assume why specifically the exhaustion procedure would not work? Yes, you do. And in this case, and I think in part of the logic in some of those other cases that we cited, is that the remedy can't go backwards. You can't take a student on Monday and fail to provide a fate. And then on Tuesday, force the student to go through an administrative process that can't take him back in time to place him in the classroom on Monday. And so... But I mean, you heard our questions. I mean, respond to the point we were making with the set of lawyers that it's just not even obvious to me your approach is more efficient or even more just. I mean, you have one individual, take the client you have who's still in school. They go through the process, they exhaust, they create the record. If what you say is going to happen, happens. Bingo. They go to federal court. Federal court says you can't do that. The lawyers are getting fees. They're forced to a choice. Are they going to do this with everyone? I don't know why that doesn't work. And if once the federal district court establishes the precedent that it has to be three hours for this kind of problem, to the extent some of these plaintiffs are similarly situated, you've got the precedent. So I'm actually questioning how this is really advancing the whole class's interest, to be honest with you. Well, your honor, your proposal doesn't work because this is a class. Okay. Just try to answer. Okay. And if you don't understand the question, tell me you don't understand it, but I think it's pretty crystal clear how I'm saying there's some efficiencies in the alternative and it's for you to say why I'm wrong. Those are not efficiencies. They're not efficiencies due to the fact that these issues are shared by all members of the class. So back to my question, they go to federal court. The school district says, we don't have the money for the extra tutor. The federal court says, we don't have money exception in the idea. That's where the text is very helpful to you. It doesn't have that exception. They get the order they want. The next person that comes forward, the school district can't say we don't have the money. That's not a cognizable exception. The next person I would submit, your honor, is not a part of that previous set of plaintiffs. That initial set of plaintiffs is the test subject for the issue that they are going to bring. You're refusing to engage with the hypothetical, which is that you lose. There is no class action. Get rid of that. But I'm conceding that you're right, that we'll just say there are a couple hundred kids with a similar problem likely to get a similar answer in the administrative process where the school district says, we appreciate that the IEP suggests they need this afternoon of tutoring. We don't have the money. We can't get it. Give it to you. You go to federal court. You get the order that says, sorry, there is no we're out of money exception. That's very powerful for student number two. I'm still not understanding your answer to that point. I guess, your honor, my disconnect is your question is pushing each individual to that administrative process. Yes, where they get attorney's fees and the school district pays for the or the state pays for the administrative process. Yes, that is what I'm assuming. And my disconnect with that assumption is that that's the futility. That's the nature of the futility argument is that why go through the process when the answer can't give you the Well, it'd be a very strange futility argument to win and create a more inefficient process. I'm trying to give you the chance. This is your last chance for you to explain why I'm wrong to think there are actually efficiencies with respecting the exhaustion process one at a time. That's what I'm trying to say. And you can keep arguing along the lines of I'm not going to accept an assumption that involves our losing our main point. I mean, that's a form of argumentation you can use. But it's in my experience has not been very successful. That just means you would win without the lawyer. But we have lawyers for a reason. And they're supposed to deal with the hypothetical. That means they didn't win everything. Like, we're trying to give you a chance to talk through this. And I thank you for the repeated opportunity, your honor. And I apologize if my responses don't seem to align exactly with where your hypothetical is trying to take me. It's not trying to take you. You're the expert. Tell us why it's inefficient to do it one at a time. And when the school district says we don't have the money, you go to federal court, you get an order that says the statute does not have an exemption for lack of money. Two short responses. Number one, the possibility for inconsistent results. And number two, the the burden that it will place on each individual, if to the extent the result is going to be the same. And if the result would be the same, then the exception to the exhaustion requirement would just do everybody a favor by streamlining the decision. And outside of that your honor, I would like to touch upon a policy consideration that was brought up on the briefings. And it's a case cited out of the first circuit. It's Frazier versus Fairhaven. And in that case, the first circuit warned that allowing plaintiffs to bypass the administrative process would disrupt the carefully calibrated balance of idea and effectively shift the burden of fact finding from the educational specialist to the judiciary. But the fear is misplaced and probably outweighed by the concerns that were set in JS. Whereas here, and as mentioned, the risks of inconsistent results outweighs the benefits of requiring exhaustion. So if each individual student would go through the process where we know the relief, as explained in Covington, would not even be available to each individual student, that situation would cause inefficiencies. It would not comport with the spirit of why idea requires exhaustion in the first place. And it actually burdens the entire process more by forcing students to go through administrative requirements with no results at the end of the tunnel. Now, I want to spend a little bit of time on the second issue of whether I just ask you to give you a chance to respond to something that I point actually helps you a little bit, but then it also seems to me a pretty powerful second point. So he says that the PLRA, which of course is at issue in Ross, is quite different because what's going on is that's a process for dignifying primarily, if not exclusively, claims created on another law, the Constitution normally, right? So you have a process and then you have this set of claims, but they're created by another law. And I thought the point he'd made that I'd not thought about was that what's different about idea, I'm not saying it's unique in U.S. code, but it is different, is that it's exhaustion, we'll just not even use that word, the process that creates the claim. There is no idea claim in the abstract. There are individuals and the individual, you go through this process and you decide if there's an IEP appropriate for this individual. And then idea, it's the process that creates the claim. And so what I thought was powerful about that point is futility is very funny. I mean, because it it prohibits you from creating the claim. That's not true with PLRA. You have the claim. And so when we account for the possibility, you have to have the process. So yes, you can challenge their denial of the process. But do you understand the point he was making? I'm just trying to give you a chance to answer it because it was powerful to me. Yes. And I think the statutory basis of where this argument comes from is significant. However, I then have to reconcile how Covington finds that where there is no administrative remedy for a wrong that the plaintiff has suffered. I'm kind of doubtful Covington talks about this issue. Well, it doesn't talk about the issue. It talks about the availability of the remedy. And so if the point is that the process makes the claim, the counterpoint is that the process can't make the claim if there is no remedy for the process to actually uncover or find. And that is precisely the allegations here is that the process would not find any remedy for these plaintiffs. The process. Well, I understand that point, but I just want to make sure you're not challenging their providing a process, though. I know, Your Honor, that was not part of the allegations in plaintiff's complaint. I got it. Right. So I guess your answer is it just still begs the question. So be it that the process creates the claim. If the claim always meets a stop sign. You know, we ought to be able to do something about that, right? That's ultimately, I guess, what you would say. Yes, Your Honor, that is correct. And I see, Your Honor, that my time has now turned red. Let me see if my colleagues have any other questions for you. Okay, well, thank you very much, Mr. Turfey. We appreciate it. And we'll allow the appellants each to have a minute. Thank you. Thank you, Ms. Halloran. I'd like to return to this question of, you know, where is the line with futility? And that also relates to, you know, what is a systemic claim against the state? And there are some circuits, and we had some discussion about the Second Circuit and creating a cause of action for a systemic claim for the state not providing a due process, an appropriate due process system. But the plain language of the statute really does draw a bright line as to where that line should be, and that there is no futility exception, or if the claim is not directly about the provision of faith, then it simply doesn't exist under the IGCA. Is there any court counsel that has said, other than our decision in Luna Perez, there is no futility exception here? Other courts have recognized it, but not applied it. For example, the Eighth Circuit in Paschel mentioned that there could be an exception, but then did not apply it. But no court has said there is not one. Correct. I do think that those courts didn't have the benefit of the recent case of Medina, which clearly lays out, the Supreme Court clearly laid out that in spending clause legislation, there should not be any inferred cause of action. So if the statute doesn't say there's a futility exception, if the statute doesn't provide for the state to have a general supervision claim, then those are not appropriate because it is a contract between the state and the federal government, and there shouldn't be additional contract provisions imposed. So I think if the other circuits, like this circuit has now, the benefit of having Medina, then it makes clear that the claims are simply not appropriate. And if there are no further questions, I will allow my fellow appellant attorneys to move forward with their rebuttal. All right. Thanks, Ms. Halloran. Mr. Van Stemfort. Thank you, Your Honor. So just two things really quick. Number one, the question that Your Honor had about whether there are efficiencies in due process proceeding. And I think the third circuit case, the TR case, does talk about the, quote, spillover effects that you can get through the due process procedures, right? If one student is successful, then that's going to have an effect on the next student and down the chain. And so I think there are significant inefficiencies with the process as articulated by the court. And then the only other thing I wanted to advise the court, Heldman, I did look up the Second Circuit case. It was actually an IDEA claim. So it was not an ADA claim. It was not a rehabilitation. What was their textual hook for the claim? Yeah, that was the, looking from the opinion again, I didn't see a textual hook. And to Ms. Halloran's point, I mean, after Medina, there may be other potential problems with proceeding on that claim. But anyway, I just wanted to clarify that for the court that I did look and it was an IDEA claim. I'm not sure exactly how that cuts, but so there you go. Thank you very much, Mr. Gibson. Thank you. And my last point on rebuttal, it goes to Covington. And if this panel is not comfortable dispensing with futility as an exception, we briefed why we think that should be the case. But the Covington case makes it very clear that any exception that's recognized by the court must be narrowly recognized. And there is nothing in Covington or in the other cases from this circuit recognizing a futility exception that speaks in terms of the fear of inconsistent results. Inconsistent results may be a natural consequence of the individualized nature of each student's claim. And so I'm asking the court not to overreach on Covington and instead look to those cases that have interpreted and applied Covington, very few. And those cases have all been related to students who've graduated and who bring claims as the Gein versus Hathaway case said, that are more akin to seeking money damages. And as the Perez case teaches us, those cases were never subject to exhaustion in the first place. Okay. Thanks to all four of you. We really appreciate your briefs, arguments, answering our questions. This is for me anyway, a challenging case. So it was, it's really terrific to have good lawyers on it. So thanks very much for your help. And the case will be submitted.